1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY BLUFORD,                    No.  2: 14:-cv-1491 AC P

12              Plaintiff,

13        v.                             ORDER

14   D. SWINGLE, et al.,

15              Defendants.

16

17        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and

18   has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis.  This

19   proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20   Plaintiff has consented to the jurisdiction of the undersigned.  ECF No. 5.

21        By order filed on July 3, 2014, plaintiff was directed to file an affidavit in support of his

22   request to proceed in forma pauperis or the filing fee.  ECF No. 4.  Plaintiff has submitted a

23   declaration that makes the showing required by 28 U.S.C. § 1915(a).  Accordingly, the request to

24   proceed in forma pauperis will be granted.

25        Screening Requirement

26        Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§

27   1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

28   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

1

1   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

2   forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments

3   of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

4   These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

5   the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. §

6   1915(b)(2).

7        The court is required to screen complaints brought by prisoners seeking relief against a

8   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

9   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

10  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

11  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

12       A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

13  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

14  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

15  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

16  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

17  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

18  Cir. 1989); Franklin, 745 F.2d at 1227.

19       A complaint must contain more than a "formulaic recitation of the elements of a cause of

20  action;" it must contain factual allegations sufficient to "raise a right to relief above the

21  speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading

22  must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of]

23  a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

24  Procedure § 1216, pp. 235-35 (3d ed. 2004).  "[A] complaint must contain sufficient factual

25  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

26  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility

27  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

28  that the defendant is liable for the misconduct alleged."  Id.

1    In reviewing a complaint under this standard, the court must accept as true the allegations

2    of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

3    (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in

4    the plaintiff's favor.   Jenkins v. McKeithen, 395 U.S. 411, 421(1969).

5         Plaintiff's Allegations

6    Plaintiff's complaint chronicles his dissatisfaction with the medical treatment he has

7    received for a chronic constipation condition.  Plaintiff names the following as defendants: High

8    Desert State Prison (HDSP) Chief Medical Officer D. Swingle; Deputy Director J. Lewis of the

9    California Department of Corrections and Rehabilitation (CDCR)-Health Care; and Secretary of

10   the CDCR, J. Beard.  Complaint, ECF No. 2 at 1.

11   When plaintiff arrived at HDSP in July of 2013, plaintiff informed non-party Dr. Rahman

12   at plaintiff's initial medical examination that he needed the three medications prescribed by the

13   doctor at the prison in Tracy to keep his system from getting "clogged up."  Dr. Rahman agreed

14   to keep plaintiff on the medications until plaintiff could receive a colonoscopy to see what might

15   be obstructing plaintiff's bowel movements.  On September 17th, plaintiff informed a certified

16   family nurse practitioner, L. Schmidt (also not named as a defendant), that he was running out of

17   his medications.  She told plaintiff she would re-order them but when, on September 20th, he ran

18   out of the medication(s), a nurse told him his medicine had not been re-ordered and he could not

19   have any refills until two weeks later.  When he argued that his system was backed up with no

20   bowel movement, the nurse gave him an "emergency" stool softener and milk of magnesia.

21   Plaintiff filed a 602 health care appeal against L. Schmidt.  Id. at 1-6.

22   Plaintiff, who is 61, had to go to the clinic daily for a week or so to receive "emergency"

23   medication" until L. Schmidt provided re-fills of his medication(s).  When Nurse Schmidt gave

24   him the re-fills, she suggested fiber tablets as well.  Although plaintiff told her the medication

25   was working and he did not want her "experimenting" on him, he agreed to take the fiber tablets.

26   Afterward, his system was even more clogged and a Nurse Withers (not a party) told him he had

27   to drink a lot of water with them.  He told Ms. Withers that he was taking Terazosin to keep him

28   from frequent urination, so she told him to stop the tablets if he could not drink a lot of water,

3

1   which he did after a few days.  Id. at 6-9.

2          At his October 3, 2013 interview with Nurse Schmidt regarding the 602 appeal plaintiff

3   wrote complaining about her, she told plaintiff she would continue giving him all his medication

4   and that following his colonoscopy he should not have any more problems.  Non-party surgeon

5   Dr. Stevenson who performed plaintiff's colonoscopy told plaintiff he had no cancerous polyps

6   and that he saw nothing that explained why his system was clogged.  He did say plaintiff had

7   "extreme" hemorrhoids.  The doctor suggested an E.G.D. (esophogogastroduodenoscopy) to

8   check plaintiff's gastrointestinal tract.  Id. at  9-11, 15.

9          At some point, plaintiff had received a pink slip from Nurse Schmidt stating that plaintiff

10  had been "'placed on chronic care.'"  Ms. Schmidt scheduled plaintiff to see her in the clinic

11  about a week after his colonoscopy.  Plaintiff told her he felt the same, then started "running off at

12  the mouth" about what the surgeon had said and about the procedure he had suggested.  Plaintiff

13  asked Nurse Schmidt if she would schedule the E.G.D. and she said "we will see," and told him

14  to leave.  Id. at 11-13.

15         In response to the denial of his administrative appeal at the first level, plaintiff explained

16  the diagnosis and prognosis of the doctor who had performed the colonoscopy and, in January

17  2014, "was shocked and devastated" by defendant Swingle's second level appeal response.

18  Instead of looking for the cause and cure of plaintiff's pain and suffering, defendant Swingle

19  addressed plaintiff as though he had done his own diagnosis and stated that plaintiff was telling

20  medical staff when and how much medication to give him.[1]  Plaintiff's actual complaint,

21  however, was that his prescribed medication was being withheld, delayed or denied.  Plaintiff

22  asserts that defendant Swingle stopped any "curative treatment."[2]  In response, plaintiff appealed

23  to the third level, claiming that defendant Swingle was committing unspecified "state violations"

24  as well as violating plaintiff's federal civil rights, inflicting cruel and unusual punishment and

25  ───────────────
    [1] Plaintiff attached Dr. Swingle's response at the second level as an exhibit, which in part stated:
26  "[i]nmates cannot dictate what medication they will receive, when they will receive it, or what
    dosage they will receive."  ECF No. 2 at 50.
27  [2] ECF No. 2 at 50.  The court notes that the appeal response itself states the appeal has been
    granted and that any request regarding an E.G.D. is a new issue improperly raised at the second
28  level and, as such, is not addressed

4

1    engaging in medical malpractice.  Defendant Lewis denied plaintiff's appeal at the third level.[3]

2    Id. at 13-18.

3           Seven months later, plaintiff filed another complaint against medical staff, this time a

4    Nurse Medina (a non-party) who "lied," telling plaintiff the pharmacy had said his medication

5    had been sent on April 4th, 2014.  Plaintiff claims he never signed for any medication on that

6    date.  Plaintiff claims that he has told all medical staff that when he is unable to have a bowel

7    movement he gets headaches, has pain in his left leg and numbness in his thigh and left foot.  Id.

8    at 19-20, 23-24.

9           Plaintiff states that he has twice been told by a Dr. Miranda (not a defendant) that he is on

10   the list for an E.G.D. procedure.  Dr. Miranda also said he/she would contact Dr. Stevenson about

11   the results of the colonscopy but plaintiff has not seen Dr. Miranda again.  Id. at 24-25.  Plaintiff

12   is very concerned about the longterm effects of being on the medication he takes daily.  Id. at 30.

13   Plaintiff claims his condition is worsening and he believes that without "a curative treatment," he

14   may suffer a heart attack, stroke or a breakdown of vital body parts. Id. at 38-39.  Plaintiff seeks

15   injunctive relief and money, including punitive, damages.  Id. at 40-41.

16          Eighth Amendment Inadequate Medical Care Claim

17          In order to state a §1983 claim for violation of the Eighth Amendment based on

18   inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

19   deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

20   To prevail, plaintiff must show both that his medical needs were objectively serious, and that

21   defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

22   (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

23   mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5

24   (1992).

25          A serious medical need exists if the failure to treat a prisoner's condition could result in

26

27   [3] In another complaint exhibit, with reference to plaintiff's request for an E.G.D. at the third level,
     it was noted as a new issue and that plaintiff had failed to provide evidence of having tried to
28   address it at a lower level per 15 Cal. Code Regs. § 3084.1(b).  ECF No. 2 at 57

1    further significant injury or the unnecessary and wanton infliction of pain.  Indications that a

2    prisoner has a serious need for medical treatment are the following:  the existence of an injury

3    that a reasonable doctor or patient would find important and worthy of comment or treatment; the

4    presence of a medical condition that significantly affects an individual's daily activities; or the

5    existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-

6    41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).

7    McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX

8    Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

9        In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

10   demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

11   at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

12   which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

13   violation.  Id. at 836-37.  It not enough that a reasonable person would have known of the risk or

14   that a defendant should have known of the risk.  Id. at 842.  Rather, deliberate indifference is

15   established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

16   inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

17   citation omitted) (emphasis added).

18       A physician need not fail to treat an inmate altogether in order to violate that inmate's

19   Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A

20   failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may

21   constitute deliberate indifference in a particular case.  Id.  However, mere differences of opinion

22   concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.

23   Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344

24   (9th Cir. 1981).  "A difference of opinion between a physician and the prisoner -- or between

25   medical professionals -- concerning what medical care is appropriate does not [without more]

26   amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012); see

27   also, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion as to

28   treatment of serious medical needs does not amount to deliberate indifference).

1    A finding that an inmate was seriously harmed by the defendant's action or inaction tends

2    to provide additional support for a claim of deliberate indifference; however, it does not end the

3    inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

4    medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

5    needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the

6    defendant."  McGuckin, 974 F.2d at 1061.

7    Although the court will assume for screening purposes that chronic constipation

8    constitutes a serious medical condition, plaintiff's allegations nonetheless fail to state claim under

9    the Eighth Amendment.  Although he claims that his medication has sometimes been delayed,

10   plaintiff also concedes that he was able to receive a form of daily treatment for the period of time

11   for which he did not have prescribed medication.

12   Plaintiff alleges that the doctor who performed his colonoscopy suggested an E.G.D. as

13   another possible diagnostic tool when the colonoscopy did not reveal the cause of any blockage.

14   The failure of any of the defendants he has named to ascertain that plaintiff would be provided

15   with the E.G.D. procedure does not, without more, implicate the Eighth Amendment.  Not

16   receiving the E.G.D. is not tantamount to denying plaintiff a "curative treatment" or to being

17   deliberately indifferent to his medical condition.  Plaintiff concedes he has been receiving

18   prescribed medication over a number of months for his condition, and, on occasions when that

19   medication is delayed, is evidently able to receive daily assistance on an emergency basis.  Not

20   receiving the additional procedure amounts to a mere difference of opinion as to the treatment

21   plaintiff should receive and does not of itself constitute an Eighth Amendment violation.  See

22   Jackson v. McIntosh, 90 F.3d at 332; Franklin v. Oregon, 662 F.2d at1344.  As stated above, "[a]

23   difference of opinion between a physician and the prisoner -- or between medical professionals --

24   concerning what medical care is appropriate does not [without more] amount to deliberate

25   indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012).

26   Moreover, a review of the second level appeal response from defendant Swingle (the

27   response that plaintiff found emotionally devastating) reveals that Swingle did not reject the

28   E.G.D. procedure.  Rather, he stated: "Be advised you cannot add an appeal issue or change an

1    appeal at the second level of review.  Your request for an esophagogastroduodenoscopy (EGD) is

2    a new issue and will not be addressed in this appeal."  ECF No. 2 at 50.  Defendant Lewis found

3    the same infirmity with respect to any request for an E.G.D. at the third level.

4         For these reasons the complaint will be dismissed, but plaintiff will be granted leave to

5    amend.

6         Due Process

7         Prisoners do not have a "separate constitutional entitlement to a specific prison grievance

8    procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855

9    F.2d 639, 640 (9th Cir. 1988)).  Even the non-existence of, or the failure of prison officials to

10   properly implement, an administrative appeals process within the prison system does not raise

11   constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  See also, Buckley

12   v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991); Azeez

13   v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a

14   procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does

15   not give rise to a protected liberty interest requiring the procedural protections envisioned by the

16   fourteenth amendment").  Specifically, a failure to process a grievance does not state a

17   constitutional violation.  Buckley, supra.  State regulations give rise to a liberty interest protected

18   by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom

19   from restraint" that "imposes atypical and significant hardship on the inmate in relation to the

20   ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).[4]  Plaintiff's due

21   process claims against these defendants will be dismissed but plaintiff will be granted leave to

22   amend.

23        Defendants sued in their individual capacity must be alleged to have: personally

24

25   [4] "[W]e recognize that States may under certain circumstances create liberty interests which are
     protected by the Due Process Clause.  See also Board of Pardons v. Allen, 482 U.S. 369[] (1987).
26   But these interests will be generally limited to freedom from restraint which, while not exceeding
     the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause
27   of its own force, see, e.g., Vitek [v. Jones], 445 U.S., [480] at 493 [1980] (transfer to mental
     hospital), and Washington [v. Harper], 494 U.S., [210] at 221-222[1990]  (involuntary
28   administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on
     the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, supra.

1  participated in the alleged deprivation of constitutional rights; known of the violations and failed

2  to act to prevent them; or implemented a policy that repudiates constitutional rights and was the

3  moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th

4  Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir.

5  1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v.

6  Pachtman, 424 U.S. 409, 417[], it is perfectly clear that not every injury in which a state official

7  has played some part is actionable under that statute."  Martinez v. State of California, 444 U.S.

8  277, 285 (1980).  "Without proximate cause, there is no § 1983 liability."  Van Ort v. Estate of

9  Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

10        Ratification of an unconstitutional act by superiors after the fact will only support liability

11  when the superiors' past actions were the moving force behind the constitutional violation in the

12  first place.  Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).  This court is unwilling

13  to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially

14  liable under a ratification theory.  However, this is not to say that persons involved in

15  adjudicating administrative disputes, or persons to whom complaints are sometimes made, can

16  never be liable.  If, for example, a reviewing official's rejections of administrative grievances can

17  be construed as an automatic whitewash, which may have led other prison officials to have no

18  concern of ever being reprimanded, a ratifying official may be liable for having put a defective

19  policy in place.

20        In this instance, plaintiff is essentially alleging that defendants Swingle and Lewis have

21  subjected him to cruel and unusual punishment by not taking all steps to treat his chronic

22  constipation condition.  However, the denial of plaintiff's request for an E.G.D. is not fully

23  substantiated even by plaintiff's own exhibits.  Defendants Swingle and Lewis declined to

24  consider the request because it was not raised in accordance with the grievance procedure.

25  Plaintiff has not implicated a particular policy as constitutionally defective nor demonstrated

26  ratification of a policy of deliberate indifference to his medical condition by these defendants by

27  this instance.  The complaint will accordingly be dismissed but with leave to amend.

28  ////

1    Defendant Beard

2    The Civil Rights Act under which this action was filed provides as follows:

3        Every person who, under color of [state law] . . . subjects, or causes
         to be subjected, any citizen of the United States . . . to the
4        deprivation of any rights, privileges, or immunities secured by the
         Constitution . . . shall be liable to the party injured in an action at
5        law, suit in equity, or other proper proceeding for redress.

6    42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

7    actions of the individual defendants and the deprivation alleged to have been suffered by plaintiff.

8    See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

9    (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

10   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits

11   to perform an act which he is legally required to do that causes the deprivation of which

12   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

13       Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

14   their employees under a theory of respondeat superior and, therefore, when a named defendant

15   holds a supervisorial position, the causal link between him and the claimed constitutional

16   violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

17   Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague

18   and conclusory allegations concerning the involvement of official personnel in civil rights

19   violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

20       Plaintiff seeks to implicate defendant Beard in his capacity as the CDCR Secretary for the

21   "insubordination of" defendants Swingle and Lewis and generally for violating state rules and

22   regulations and for federal violations.  ECF No. 2 at 31.  As noted, plaintiff has not framed a

23   colorable claim of a constitutional deprivation he has suffered by any action of defendants

24   Swingle and Lewis.  In addition, he has not set forth any action or omission by defendant Beard

25   that links him to any constitutional deprivation plaintiff suffered.  Fayle v. Stapley, 607 F.2d at

26   862; Mosher v. Saalfeld, 589 F.2d at 441.  As stated above, vague and conclusory allegations

27   concerning the involvement of official personnel in civil rights violations are not sufficient.  Ivey

28   v. Board of Regents, 673 F.2d at 268.  Accordingly, plaintiff has not framed a claim against

10

1    defendant Beard in his individual capacity.

2            To the extent that plaintiff seeks prospective injunctive relief, plaintiff is not barred by the

3    Eleventh Amendment from suing a state official in his official capacity.  Idaho v. Coeur d'Alene

4    Tribe, 521 U.S. 261, 267-269 (1997); Pennhurst State School & Hospital v. Halderman, 465 U.S.

5    89, 102-106 (1984); Ex parte Young, 209 U.S. 123, 159-160 (1908).  "Of course a state official in

6    his or her official capacity, when sued for injunctive relief, would be a person under § 1983

7    because 'official-capacity actions for prospective relief are not treated as actions against the

8    State.'"  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting Kentucky

9    v. Graham, 473 U.S. 159, 167 n.14 (1985); Doe v. Lawrence Livermore Nat. Lab., 131 F.3d 836,

10   839 (9th Cir.1997).  "[I]n determining whether the doctrine of Ex parte Young avoids an Eleventh

11   Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the]

12   complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

13   prospective.'"  Virginia Office for Protection & Advocacy,131 S. Ct. 1632, 1639 (2011) (quoting

14   Verizon Md. Inc. v. Public Serv. Commn. of Md., 535 U.S. 635, 645 (2002)).

15          The complaint will be dismissed but plaintiff will be granted leave to amend.

16          Amendment

17          If plaintiff chooses to amend the complaint, he must demonstrate how the conditions

18   complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625

19   F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named

20   defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some

21   affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo

22   v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v.

23   Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of

24   official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents,

25   673 F.2d 266, 268 (9th Cir. 1982).

26          In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

27   make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

28   complaint be complete in itself without reference to any prior pleading.  This is because, as a

general rule, an amended complaint supersedes the original complaint.  See <u>Lacey v. Maricopa</u> <u>County</u>, 693 F.3d 896, 927 (9th Cir. 2012) ) ("the general rule is that an amended complaint super[s]edes the original complaint and renders it without legal effect... .")  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order.  Failure to file an amended complaint will result in dismissal of this action.

DATED: October 10, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE